# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JOSIE TAM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-2812-STA-tmp |
| | ) | |
| HARRAH'S TUNICA CORPORATION, | ) | |
| INC.; HARRAH'S ENTERTAINMENT, | ) | |
| INC.; GRAND CASINOS, INC.; | ) | |
| HARRAH'S OPERATING COMPANY, | ) | |
| INC.; and BL DEVELOPMENT | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GEORGIA WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-2813-STA-cgc |
| | ) | |
| HARRAH'S TUNICA CORPORATION, | ) | |
| INC.; HARRAH'S ENTERTAINMENT, | ) | |
| INC.; GRAND CASINOS, INC.; | ) | |
| HARRAH'S OPERATING COMPANY, | ) | |
| INC.; and BL DEVELOPMENT | ) | |
| CORPORATION, | ) | |

## ORDER DENYING PLAINTIFFS' MOTION FOR A NEW TRIAL, OR IN THE ALTERNATIVE, TO ALTER AND AMEND JUDGMENT

Before the Court is Plaintiffs' Motion for a New Trial, or in the Alternative, to Alter and

Amend Judgment (D.E. # 150), filed on November 28, 2011. Defendants filed a Response (D.E.

1

# 152) on December 12, 2011.  Plaintiffs filed a Reply (D.E. # 157) on January 26, 2012.  For the following reasons, Plaintiffs' Motion is **DENIED**.

## BACKGROUND

Plaintiffs Josie Tam ("Tam") and Georgia Williams ("Williams") (collectively "Plaintiffs") brought claims of age discrimination under the Age Discrimination in Employment Act ("ADEA") against Defendants Harrah's Entertainment, Inc. ("HEI") and Harrah's Operating Company ("HOC") (collectively "Defendants") on November 24, 2008.  (D.E. # 1.)[1] Additionally, Tam alleged unlawful discrimination on the basis of her national origin and retaliation for participating in a protected activity, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  (D.E. # 1.)  Plaintiffs' Complaints also alleged discrimination on the basis of gender and race in violation of Title VII, but Plaintiffs voluntarily dismissed those claims at trial.  (Memorandum Opinion and Order, D.E. # 143, at 2 n.1.)  Judge Donald[2] granted Defendants Harrah's Tunica Corporation and BL Development Corporation's ("BL Development") Motions to Dismiss (D.E. # 9, 12) on July 28, 2009.  (D.E. # 36.)  She also granted Defendant Grand Casinos, Inc.'s ("Grand") Motion to Dismiss (D.E. # 45) on November 16, 2009.

Judge Donald held a bench trial on July 25-26, 2010, and issued her Memorandum Opinion and Order ("the Order") finding for Defendants on all of Plaintiffs' claims on October 31, 2011.  (D.E. # 143.)  Judge Donald's Findings of Fact are hereby incorporated by reference.

---

[1]     The Court will refer to dates and docket entries in 08-2812 when it cites to portions of the record in these companion cases.

[2]     The Court was assigned to the case on March 28, 2012, to address the remaining pending motions due to Judge Donald's elevation to the Sixth Circuit Court of Appeals.

(Order, D.E. # 143, at 2-9.)  As to her Conclusions of Law, Judge Donald found that Williams

had failed to make out the third and fourth elements of her prima facie case of discrimination

under the ADEA.  (*Id.* at 10.)  Williams did not prove that she was qualified for her position

because she relied on "stale" positive performance reviews from her time with Grand before

Defendants bought Grand and implemented stricter performance expectations.  (*Id.*)  She also

failed to present evidence that she was replaced by a younger individual.  (*Id.* at 14.)  She

testified that she was replaced by someone named "Chad," but she did not say how old he was.

(*Id.* at 14-15.)  Moreover, Tammy Young ("Young"), the individual who made the ultimate

decision to terminate Plaintiffs, testified that Williams was replaced by a man named Matt

Haskill, but no testimony was given regarding his age.  (*Id.* at 15.)  Accordingly, Judge Donald

concluded that Williams failed to make out her prima facie case under the ADEA, and Judge

Donald found for Defendants on Williams' claim.  (*Id.*)

Additionally, Judge Donald noted that even if Williams had proven all of the elements of

her prima facie case, "the great weight of the evidence support[ed] the conclusion that

[Defendants] terminated Williams' employment for legitimate, performance-related reasons."

(*Id.* at 15 n.8.)  Williams' ADEA claim was based on two age-related comments by Brad Hirsch

("Hirsch"), her immediate supervisor, which he denied making.  (*Id.*)  Judge Donald continued:

> Even accepting Williams' testimony as true, these two isolated remarks are far
> outweighed by the abundance of evidence documenting Williams' performance
> problems.  Moreover, they were not made by . . . Young, the person ultimately
> responsible for the decision to terminate Williams' employment, but by Hirsch,
> who merely recommended Williams' termination.  Young testified that Hirsch
> recommended Williams' termination because she failed to accomplish the goals
> set forth in her Action Plan.  Young independently reviewed Hirsch's findings
> regarding Williams' performance on the Action Plan and concluded that she had
> not been successful.  Only then did Young decide to terminate Williams'

employment. This evidence simply would not support a finding—were this Court in a position to make one—that Williams' age was the but-for cause of her termination.

(*Id.*)

As for Tam's ADEA claim, Judge Donald found that Tam's claim failed for the same reasons as Williams': she did not make out the third and fourth elements of her prima facie case. Judge Donald held that Tam did not meet Defendants' expectations at the time of her termination, thereby failing to demonstrate that she was qualified for the position. (*Id.* at 19.) Similarly, Tam did not present evidence that she was replaced by a younger individual; Tam merely testified that she was replaced by a man named Chris Griffin but did not know his age. (*Id.*) One of Defendants' witnesses testified that she was not replaced by anyone for over a year until Defendants restructured Tam's department and reassigned existing employees. (*Id.*) Judge Donald did not find Tam credible, as her "credibility as a witness was called into question by her candid admission that she had difficulty understanding the questions that were asked of her on the stand" and because she "gave no foundation for the basis of her belief that she was replaced by a man named Chris Griffin." (*Id.* at 19 n.10.) Judge Donald's findings did not discuss pretext for Tam's ADEA claim. (*Id.* at 19.)

Tam's Title VII national origin claim failed for the same reasons as her ADEA claim: Tam did not prove that she was qualified for the position she held and that she was replaced by someone outside the protected class. (*Id.* at 20.) Judge Donald incorporated by reference her analysis of Tam's ADEA claim and noted that "Tam's evidence failed to establish that she was meeting Harrah's legitimate performance expectations at the time of her termination." (*Id.*)

Thus, Tam was not qualified for her position, and Judge Donald found for Defendants on her national origin claim.

As for Tam's Title VII retaliation claim, Judge Donald found that Tam satisfied three elements of her prima facie case: she engaged in protected activity when she filed her initial charge of discrimination on May 24, 2007, and Defendants were aware of her activity, as evidenced by the EEOC's Notice of Charge, dated May 31, 2007, and Young's testimony about receiving the Notice of Charge. (*Id.*) Tam's termination also qualified as an adverse employment action. (*Id.*) However, Judge Donald found that Tam did not prove a causal connection between her termination and her filing of the EEOC charge. (*Id.*) Defendants terminated Tam a little over thirty days after she filed her EEOC charge, but Judge Donald found that temporal connection insufficient to establish a causal link on its own. (*Id.* at 21.) Tam did not present additional evidence of causation other than temporal proximity. (*Id.* at 22.) Moreover, that temporal proximity was undercut because Tam's on-the-job performance had been called into question beginning in September of 2006, and she had been placed on an Action Plan nearly eight months before she filed her charge with the EEOC. (*Id.*) Thus, Judge Donald found that Tam had not presented sufficient evidence of causation, thus failing to meet her prima facie case and resulting in a finding for Defendants on Tam's retaliation claim. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(a)(1)(B) ("Rule 59(a)(1)(B)") states that, after a nonjury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . for any reason for which a rehearing has heretofore been granted in a suit in

equity in federal court."[3]  Also after a nonjury trial, "the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment."[4]  A motion for a new trial in a nonjury case or a petition for rehearing should be based upon manifest error of law or mistake of fact, and a judgment should not be set aside except for substantial reasons.[5]  "Because they upset a trial's outcome, new trial motions are generally disfavored and should be awarded with great caution."[6]  "A party may not seek a new trial on grounds not brought contemporaneously to the trial judge's attention.  The courts recognize a narrow exception to this waiver rule where a trial error is so fundamental that gross injustice would result were it not corrected."[7]

As for motions to alter or amend a judgment, "a motion to alter or amend a judgment must be filed no later than [twenty-eight] days after the entry of the judgment."[8]  To grant a motion under Rule 59(e), there must be "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."[9]  Thus,

---

[3]    Fed. R. Civ. P. 59(a)(1)(B).

[4]    Fed. R. Civ. P. 59(a)(2).

[5]    *Risher v. United States*, No. , 2011 WL 1626776, at *1 (W.D. Tenn. Apr. 28, 2011) (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2805 (2d ed. 2010)); *Milwee v. Peachtree Cypress Inv. Co*, 510 F. Supp. 284, 290 (E.D. Tenn. 1978).

[6]    Baicker-McKee et al., *Federal Civil Rules Handbook* 1124 (2010).

[7]    *Id.* at 1127.

[8]    Fed. R. Civ. P. 59(e).

[9]    *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 474 (6th Cir. 2009) (quoting *Henderson v. Walled Lake Consol. Schs.*, 469 F.3d 479, 496 (6th Cir. 2006)).

a Rule 59(e) motion is appropriate "where the court misunderstood the facts, a party's arguments, or the controlling law. . . ."[10]

## ANALYSIS

Plaintiffs appear to present two separate Motions in one. First, they argue that the Court should grant a new trial based on Defendants' alleged violation of Federal Rule of Evidence 615 ("the Rule" or "Rule 615") and Defendants' submission of evidence of Plaintiffs' replacements in spite of their failure to respond to or supplement their interrogatories. Second, Plaintiffs aver that the Order should be altered or amended for several reasons: Plaintiffs were indeed qualified for their positions, Judge Donald improperly applied the *McDonnell Douglas* analysis at trial, and Judge Donald improperly applied the *McDonnell Douglas* analysis to Williams' ADEA claim and Tam's national origin discrimination claim in the face of direct evidence of discrimination.

### Violation of Rule 615

Rule 615(2) provides that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses. . . . This rule does not authorize the exclusion of . . . an officer or employee of a party which is not a natural person designated as its representative by its attorney."[11] While sanctions for Rule 615 violations are within the discretion of the trial court,[12] and the trial court's decision to permit witnesses to

---

[10]     Baicker-McKee et al., *Federal Civil Rules Handbook* 1133.

[11]     Fed. R. Evid. 615(2).

[12]     *United States v. Scharstein*, 531 F. Supp. 460, 464 (E.D. Ky. 1982).

remain in the courtroom is within its discretion,[13] the Sixth Circuit has recognized situations in which an individual can be a corporate representative for Rule 615(2) purposes without being an employee or officer of a corporation.[14]  For example, in *Galen*, the Sixth Circuit focused on Rule 615(2)'s purpose—giving corporations the right to have a representative present throughout a trial—and held that a corporation without current employees that was no longer operating could permit a former employee to serve as its corporate representative throughout trial.[15]

Other jurisdictions' case law is instructive.  Where an individual was an independent contractor rather than an "officer or employee" of the defendant corporation, the Fourth Circuit found that the individual could not serve as a corporate representative.[16]  Even though the corporation had given the individual a letter entitling it to act on its behalf at trial, the court declined to "agree that a corporation's mere designation of a person to act on its behalf at trial converts the person into its employee.  Moreover, to allow a corporate party to 'employ' a person solely as its trial representative would render Rule 615 meaningless."[17]  In other situations, the Fourth Circuit has adhered to the plain language of Rule 615: when a corporate party tried to designate as its corporate representative an expert who was neither "an officer or employee" of the party, the court did not allow the designation.[18]  However, at a prior trial, the same expert

---

[13]     *Roberts* ex rel. *Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 784 (6th Cir. 2003).

[14]     *Id.*

[15]     *Id.* at 785.

[16]     *Opus 3 Ltd. v. Heritage Park, Inc.*, 91 F.3d 625, 630 (4th Cir. 1996).

[17]     *Id.*

[18]     *Woodson v. McGeorge Camping Ctr., Inc.*, 42 F.3d 1387, at *3 (4th Cir. Nov. 30, 1994).

witness was designated as a corporate representative without objection by the opposing party.[19] While the description of an individual as a "former owner of a corporation" was insufficiently clear to designate him as a corporate representative,[20] a party's in-house counsel was an "employee" sufficient to qualify as a corporate representative.[21] Thus, from this brief survey of cases, the Court concludes that the text of Rule 615 means what it says: to be exempt from the Rule, a corporate representative must be an "officer or employee" of a party.

Additionally, stipulations primarily function to narrow disputes to the essential contested issues.[22] However, parties are not bound to stipulations of law if the stipulation is based on erroneous or inaccurate information.[23] But courts are generally bound to voluntarily entered-into stipulations of fact for reasons related to trial efficiency and avoiding strategic behavior by the parties at trial.[24] A court may decide to strike a witness's testimony for violation of the Rule in the exercise of its judicial discretion.[25]

In their Motion, Plaintiffs argue that they invoked the Rule to exclude all disallowed witnesses from the courtroom but that Defendants' designated corporate representative, Young,

---

[19]     *Id.* at *2.

[20]     *Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 175 (3d Cir. 1977).

[21]     *Minebea Co., Ltd. v. Papsti*, 374 F. Supp. 2d 231, 237 (D.D.C. 2005).

[22]     *Estate of Quirk v. C.I.R.*, 928 F.2d 751, 759 (6th Cir. 1991).

[23]     *See, e.g.*, *Bear River Paper & Bag Co. v. City of Petoskey*, 241 F. 53, 55-56 (6th Cir. 1917) (noting that stipulations as to the law of a state are not binding on the court if they are erroneous).

[24]     *FDIC v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991).

[25]     *Four-Way Coal Co. v. Clark Equip. Co.*, 511 F.2d 1196, 1197 (6th Cir. 1975).

was not an employee of either Defendant.[26]  As such, Plaintiffs submit that Defendants knew that Young was going to testify and that, because she was not employed by either Defendant, she was not a proper corporate representative.  Accordingly, Plaintiffs submit that Defendants violated the Rule by failing to exclude Young from the courtroom.[27]  Plaintiffs argue that this violation unfairly prejudiced them given the importance of Young's testimony and her position as the final witness to testify in the trial.[28]  Plaintiffs assert that they are entitled to a new trial based on Defendants' alleged violation of the Rule.[29]

In response, Defendants argue that Young was an appropriate corporate representative and that Judge Donald properly allow her testimony.[30]  Defendants point out that Young testified that she worked for BL Development, which owned Harrah's Tunica, which is owned by the parent company Harrah's Entertainment, which has now transferred ownership and has been renamed Caesar's Entertainment; thus, Young testified that she worked for the same family of companies as Plaintiffs during the relevant period.[31]  Defendants point out that they stipulated that they employed Plaintiffs in 2007 and that they employed both Young and Plaintiffs.[32]  Moreover, Defendants argue that Plaintiffs waived any objection to Young's designation as their

---

[26]     (Pls.' Mot., D.E. # 150-1, at 7.)

[27]     (*Id.*)

[28]     (*Id.* at 9.)

[29]     (*Id.* at 10.)

[30]     (Defs.' Resp., D.E. # 152, at 6.)

[31]     (*Id.* at 7.)

[32]     (*Id.*)

corporate representative because Plaintiffs' counsel stated that he "had no problem with [Young serving as Defendants' representative]."[33]  Plaintiffs did not make a standing objection to preserve their initial protests that Young not be allowed to remain in the courtroom.[34] Defendants also argue that Young's testimony was not essential to the Order's findings and that the Order's results would remain unaltered even if the Court disregarded Young's testimony.[35]

In reply, Plaintiffs argue that Young does not satisfy the definition of a corporate representative because she did not work for Defendants; Defendants did not control the details of her work performance, and the record did not establish that Defendants controlled BL Development's work performance.[36]  Plaintiffs' counsel asserts that they agreed to designate Young as Defendants' corporate representative "on the simple proposition and stipulation that she was employed by Defendants."[37]  Plaintiffs point to Defendants' argument that Young was employed by the same family of companies as Plaintiffs but note that this stipulation was not the one made at trial or in line with the definition of "employment" or "corporate representative" contemplated by the Federal Rules of Evidence or Civil Procedure.[38]  Thus, because Young

---

[33]     (*Id.* at 8.)

[34]     (*Id.*)

[35]     (*Id.* at 9-10.)

[36]     (Pls.' Reply, D.E. # 157, at 2.)

[37]     (*Id.*)

[38]     (*Id.* at 2-3.)

admitted that she was employed by a non-party, she does not meet the definition of a corporate representative, and Plaintiffs request that the Court exclude her testimony.[39]

The exact terms of the stipulation to which the parties agreed can be discerned from the record. The following discussions occurred at different times during the trial, all ending in one conclusion: Young testified that she worked for the same employers as Plaintiffs, and the parties stipulated that Defendants employed Plaintiffs. The latter stipulation remains unchallenged. Indeed, while taking up preliminary matters, the follow exchange occurred:

> THE COURT: Well, the rule of sequestration will be invoked as to all sides, but you know that the defendants do have the right to have a case representative or a corporate person with them.
>
> MS. DAVIS: Yes, Your Honor.
>
> THE COURT: So that person can certainly stay in.
>
> MR. CRAIG: Okay. I believe this is Ms. Young, Your Honor. Is that correct?
>
> MS. DAVIS: Yes, Your Honor, and she is serving as our corporate representative.
>
> MR. CRAIG: Your Honor, Rule 615 says that a person, corporate representative can be an officer or an employee of the party which is not a natural person designated as its represented by an attorney. I believe in the two prior proceedings Ms. Young has testified she is not employed by either Harrah's Entertainment or Harrah's Operating Company. As such I would then think that she is not an appropriate corporate representative and think that she should be excluded because she is listed as a witness.
>
> MR. HANCOCK: One thing, Your Honor, we have offered the court a number of stipulations which we can get to in a second. But one of the stipulations that's not on there that we were going to announce, we are not challenging -- we will stipulate, rather, to the fact that Harrah's was the employer of these plaintiffs, which I know was a big issue in the other cases.

---

[39]        (*Id.* at 3.)

THE COURT:  Sure.

MR. HANCOCK:  So I -- I think by stipulating to that, we probably get around that issue.  If we don't, maybe we need to talk more about it.

MR. CRAIG:  As long as that stipulation is made, Your Honor, I have no problem with it.

THE COURT:  She is a corporate representative.[40]

Thus, at this point of the trial, it appears that the parties had arrived at two stipulations: that Defendants employed Plaintiffs and that Young could serve as Defendants' corporate representative.  Additionally, the stipulation regarding Young's capacity as a corporate representative was confirmed later:

MR. CRAIG:  Okay.  Now in 2007 who was your employer, Ms. Young?

MS. YOUNG:  2007, BL Development, I worked for Harrah's Tunica.

MR. CRAIG:  Okay.  But you stipulated, who do you work for today?

MS. YOUNG:  Harrah's Tunica.

MR. CRAIG:  Okay.

MS. YOUNG:  Which is owned by BL Development --

MR. CRAIG:  All right.

MS. YOUNG:  -- and our parent company is Caesar's Entertainment now, it was the[n] Harrah's Entertainment.

MR. CRAIG:  Okay.  But there was a stipulation made that you worked, earlier in this proceeding that you worked for the defendants in this case, which is Harrah's Operating Company and Harrah's Entertainment.  Do you care to offer an explanation to that?

MS. YOUNG:  I don't think I said that, I don't.

---

[40]     (Trial Tr. at 7-9.)

MR. CRAIG:  Okay.

MR. HANCOCK:  Your Honor, if I may, just for the record, our stipulation didn't have anything to do with who employed Ms. Young, it was the plaintiffs who were employed by the defendants.

THE COURT:  Okay.  That's a stipulation.

BY MR. CRAIG:  So in 2007 you worked for a different company than the plaintiffs, Ms. Young; is that your testimony?

MS. DAVIS:  Objection, Your Honor, there is no testimony on the record for that.

THE COURT:  Okay.  Let's see, Mr. Hancock just said that the stipulation was that the plaintiffs worked for, I believe, Harrah's Entertainment or Harrah's Operating, and now he's asking her whether she worked for the same company as the plaintiffs during the time or a different company and that's a fair question.

MR. CRAIG:  Yes.

MS. DAVIS:  Your Honor, we believe it was characterized was that your testimony.  My objection was that she did not testify to that.

MR. CRAIG:  Your Honor, she testified that she was --

THE COURT:  Actually I think there is no testimony in the record --

MS. DAVIS:  I'm sorry, Your Honor.

THE COURT:  That's okay, so let's just be clear.  So there is a stipulation regarding where the -- for whom the plaintiffs worked.  And the witness has just given you testimony about her employer.  So what question is it that you want to ask her in light of the stipulation and in light of the testimony?

BY MR. CRAIG:  In February through July of 2007, did you work for the same company as the plaintiffs?

A.    Yes.[41]

---

[41]        (Trial Tr. at 492-94.)

Thus, although Darrell Pilant ("Pilant") testified that he and Young worked for the same company and did not work for Defendants,[42] Young's own testimony, combined with the parties' stipulation, carries the day.  Judge Donald accepted the parties' stipulation that Young could serve as Defendants' corporate representative under Rule 615 at the beginning of the trial; if Plaintiffs were dissatisfied with that stipulation at any point during the trial, they should have objected at that time, not in this post-trial Motion.  Additionally, Plaintiffs have not presented any truly conflicting testimony sufficient to undermine the factual foundation for the stipulation.  Despite Pilant's statement that Young did not work for Defendants during the relevant time period, Young testified that she worked "for the same company as Plaintiffs."  The parties stipulated that Plaintiffs worked for Defendants.  As such, Young essentially testified that she worked for Defendants.  Therefore, because she worked for them, she could serve as their corporate representative under Rule 615, and she was permitted to remain in the courtroom during the entire trial.

In light of this evidence, and after thoroughly reviewing the record, the Court finds Plaintiffs' arguments that Young should not have been designated as Defendants' corporate representative to be without merit.  Therefore, Plaintiffs' Motion for a New Trial for Defendants' alleged Rule 615 violation is **DENIED**.

### Failure to Respond to Discovery or Provide Supplemental Discovery

Federal Rule of Civil Procedure 26 ("Rule 26") governs discovery in federal civil cases, and Federal Rule of Civil Procedure 33 ("Rule 33") controls preponderance of interrogatories. Rule 26(b) governs discovery's scope and limitations.  Rule 33(a) provides that "[a]n

---

[42]        (Trial Tr. at 435.)

interrogatory may relate to any matter that may be inquired into under Rule 26(b)."[43]  Thus, because interrogatories are part of written discovery contemplated by the Rules, they fall within the supplementation requirement of Rule 26(e).  Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory . . . —must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[44]

If a party fails to disclose or supplement information as required by Rule 26(a) or (e), "the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."[45]  Federal Rule of Civil Procedure 37 ("Rule 37") provides courts with additional sanctions "in addition to or instead of this sanction . . . on motion and after giving an opportunity to be heard," including ordering payment of the reasonable expenses, including attorney's fees, caused by the failure; informing the jury of the party's failure, and imposing other appropriate sanctions, which include prohibiting the disobedient party from supporting or opposing designated claims or defenses or from introducing designated matters into evidence.[46]

---

[43]    Fed. R. Civ. P. 33(a)(2).

[44]    Fed. R. Civ. P. 26(e)(1).

[45]    Fed. R. Civ. P. 37(c)(1).

[46]    Fed. R. Civ. P. 37(b)(2)(A)(ii); 37(c)(1)(A-C).

Rule 37 requires absolute compliance with Rule 26(a); thus, it "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or substantially justified."[47]  But the total exclusion of testimony is not the sole sanction available to the district court; indeed, Rule 37(c)(1) does not compel the district judge to exclude testimony in its entirety.[48]  The potentially sanctioned party must prove harmlessness.[49]

Furthermore, at the motion for a new trial stage, evidence which is improperly admitted *over objection* warrants relief only if it affects a substantial right of a party.[50]  The crux of the inquiry is whether the evidence is harmless or affects a substantial right of the party, which involves assessing the likelihood that the error affected the case's outcome.[51]  Additional considerations include whether the evidence was central or peripheral to the issues to be determined by the factfinder and the strength or absence of other relevant evidence.[52]  However, this standard applies only to evidence to which a party objected at trial; if a party did not object and the evidence was improperly allowed, then the erroneous admission warrants relief only if the error was plain.[53]

---

[47]     *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010) (quoting *Roberts* ex rel. *Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)).

[48]     *Galen of Va.*, 325 F.3d at 784.

[49]     *R.C. Olmstead, Inc.*, 606 F.3d at 272.

[50]     *Swans v. City of Lansin*g, 65 F. Supp. 2d 625, 644 (W.D. Mich. 1998) (emphasis added).

[51]     *Id.*

[52]     *Id.* (citing *Schrand v. Fed. Pac. Elec. Co.*, 85 F.2d 152, 157 (6th Cir. 1988)).

[53]     Fed. R. Evid. 103(d); *Swans*, 65 F. Supp. 2d at 644.

In their Motion, Plaintiffs argue that Defendants did not supplement their discovery responses and failed to properly respond to discovery requests despite their representations that they had fully and completely responded to all of Plaintiffs' discovery requests.[54] Plaintiffs state that they tried to get information from Defendants related to Plaintiffs' replacements, if any, but Defendants failed to identify any employees; Defendants stated that they had no information regarding whether they had hired a replacement for Plaintiffs' positions.[55] However, at trial, Defendants offered testimony that Tam was not replaced and that Williams was replaced by an individual of unknown age.[56] Plaintiffs argue that Defendants' failure to supplement their discovery to include this information was not substantially justified and prejudiced Plaintiffs by denying them the opportunity to depose additional witnesses or protect them from surprise at trial.[57] As a sanction, Plaintiffs cite to Rule 37(c)(1) and imply that Defendants should not have been allowed to use the information at trial, thereby meriting a new trial.[58]

In response, Defendants argue that they relied only on those witnesses identified by Plaintiffs during the case's discovery phase, that they used only those documents already in Plaintiffs' possession, and that Plaintiffs were not prejudiced by any failure to supplement their discovery responses.[59] Defendants rely on Judge Donald's repeated rulings in Plaintiffs' favor

---

[54]    (Pls.' Mot., D.E. # 150-1, at 10-11.)

[55]    (*Id.* at 11.)

[56]    (*Id.*)

[57]    (*Id.* at 12-13.)

[58]    (*Id.* at 12.)

[59]    (Defs.' Resp., D.E. # 152, at 10.)

which limited the scope of testimony presented to that which was made available to Plaintiffs during discovery.[60] Defendants then cite to Tennessee state case law and an Arizona state case from 1970 to support their assertion that any surprise Plaintiffs experienced regarding Defendants' evidence of their replacements stemmed from Plaintiffs' own failure to depose or otherwise discover the substance of the testimony of Plaintiffs' own witnesses.[61] Defendants argue that, as in state court proceedings in Arizona and Tennessee, this Court has wide discretion to allow the testimony of witnesses beyond the scope of Defendants' answers to Plaintiffs' interrogatories.[62] Moreover, Defendants note that Plaintiffs failed to identify any specific testimony or instance during this trial where improper testimony was permitted by the Court over their objection.[63] Defendants characterize Plaintiffs' argument as a renewed objection to Judge Donald's discovery rulings and argue that they have not shown that any trial testimony should have been excluded or that there would have been a different outcome if the evidence had been excluded.[64]

In reply, Plaintiffs argue that Defendants are trying to have their cake and eat it too: they assert that Defendants claim that their failure to respond to discovery was harmless, but it was the very information that Plaintiffs sought with that discovery which formed part of Plaintiffs'

---

[60]    (*Id.* at 11.)

[61]    (*Id.* at 12.)

[62]    (*Id.* at 13.)

[63]    (*Id.* at 14.)

[64]    (*Id.*)

failure at trial.[65]  Plaintiffs protest Defendants' argument that they might have discovered the same evidence through depositions because that possibility does not relieve Defendants of their obligations to appropriately respond to and supplement Plaintiffs' interrogatories.[66]  Plaintiffs remind the Court that the information which was not available to them—the testimony concerning Plaintiffs' replacements—was not provided in discovery and point out that Judge Donald properly excluded most other evidence that Defendants did not provide in discovery.[67]

At the outset, the Court finds Defendants' failure to supplement their discovery troubling and their reliance on aged state-law cases unpersuasive.  The Court appreciates the difficulty of taking a case approximately one month prior to trial, but when Defendants decided to change their defense theory from arguing that they were not Plaintiffs' employers to arguing that Plaintiffs could not make out a case under Title VII or the ADEA, the discovery they propounded under their prior theory was rendered incomplete.  Indeed, Rule 26(e)(1) requires parties to supplement or correct their discovery responses "in a timely manner."  Although Judge Donald set a firm trial date of July 25, 2011, Defendants had approximately one month before trial to supplement their discovery responses to conform to the evidence they intended to produce at trial.  Defendants have not explained their behavior to the Court's satisfaction.  Defendants cannot now disingenuously shift the blame to Plaintiffs for failing to pursue evidence that Defendants did not indicate existed.

---

[65]     (Pls.' Reply, D.E. # 157, at 3.)

[66]     (*Id.* at 3-4.)

[67]     (*Id.* at 4.)

However, despite Defendants' shortcomings, even if the Court were to exclude evidence related to Interrogatory # 5, the Court would not grant Plaintiffs' Motion for a New Trial. In HOC's responses to Plaintiffs' Interrogatories, Plaintiffs asked "whether [HOC] hired a replacement for [Tam's] position. If yes, state the name, age, gender, [and] race of that person."[68] HOC responded that it was "not the employer of any employees at [Tam's] location, was not [Tam's] employer, and has no information regarding this interrogatory."[69] Similarly, in response to the identical interrogatory, HEI stated that it was "not an employer, was not [Tam's] employer, and has no information regarding this interrogatory."[70] But at trial, Defendants presented evidence that Tam was not replaced by anyone and that Williams was replaced by a man named Matt Haskill of unknown age.[71] Although Plaintiffs objected to Defendants' presentation of other unsupplemented evidence requested in their Interrogatories, and Judge Donald consistently sustained their objections,[72] Plaintiffs did not object to the evidence Defendants introduced related to Plaintiffs' replacements.

Plaintiffs' failure to object, combined with the subject matter of Interrogatory # 5, render a new trial unnecessary. First, Plaintiffs did not object and call Judge Donald's attention to

---

[68]    (HEC's Resp. to Pl.'s Interrogs., D.E. # 150-2, at 3.)

[69]    (*Id.*)

[70]    (HEI's Resp. to Pl.'s Interrogs., D.E. # 150-3, at 3.)

[71]    (Order, D.E. # 143, at 15, 19.)

[72]    (Trial Tr. at 10-18 (sustaining objection related to Interrogatory # 4, which asked Defendants to identify other employees who successfully completed an Action Plan similar to Plaintiffs' Action Plans), 459-60, 476 (sustaining objection related to Interrogatory # 3, which asked Defendants to detail the purpose of Plaintiffs' Action Plans), 477-79 (sustaining objection to Interrogatory # 18, which asked Defendants to identify every individual involved in Plaintiffs' termination processes).)

Defendants' introduction of evidence regarding their replacements; thus, Plaintiffs appear to have waived their right to raise this argument in their Motion for a New Trial. But it appears from the record that, had Plaintiffs objected, Judge Donald would have sustained the objection and prohibited Defendants' testimony regarding Plaintiffs' replacements from coming into evidence. Second, had Judge Donald excluded testimony about Plaintiffs' replacements, Plaintiffs would still have failed to make out prima facie cases. Judge Donald held that Williams was not qualified for her position and that she did not present evidence that she was replaced by a younger individual; for those two reasons, Williams' ADEA claim failed.[73] Tam's ADEA and Title VII national origin claims failed for the same two reasons, and whether Tam was replaced by someone within the protected class was not an element of her prima facie case of retaliation under Title VII.[74] Accordingly, even if the Court were to exclude or strike Young's testimony about Plaintiffs' replacements, Judge Donald's decision regarding Plaintiffs' claims would remain unchanged because they both failed to present sufficient evidence that they were qualified for their positions. Therefore, Plaintiffs' Motion for a New Trial is **DENIED**.

### Application of Direct Evidence to the *McDonnell Douglas* Test

Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin."[75] Plaintiffs may establish discrimination in one of two ways: through the use of direct evidence or through circumstantial evidence using the burden-shifting framework

---

[73] (Order, D.E. # 143, at 10-15.)

[74] (*Id.* at 19-22.)

[75] 42 U.S.C. § 2000e-2(a)(1).

articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).[76]  Any evidence which

requires an inference to be drawn to determine the motivation behind it is not direct evidence of

discriminatory animus.[77]  Direct evidence establishes "not only that the plaintiff's employer was

predisposed to discriminate on the basis of [a plaintiff's protected status] but also that the

employer acted on that predisposition."[78]  To determine whether statements are relevant as direct

evidence of discrimination or are merely stray remarks, courts consider: "(1) whether the

remarks were made by the decisionmaker or by an agent uninvolved in the challenged decision;

(2) whether the remarks were isolated or part of a pattern of biased comments; (3) whether the

remarks were made close in time to the challenged decision; and (4) whether the remarks were

ambiguous or clearly reflective of discriminatory bias."[79]

Additionally, accent and national origin are inextricably intertwined, and the EEOC

recognizes linguistic discrimination as national origin discrimination.[80]  Moreover, the Sixth

Circuit has recognized that discrimination based on an individual's manner of speaking can be

---

[76]     *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 835 (6th Cir. 2012).

[77]     *See id.* at 836.

[78]     *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 707 (6th Cir. 2008).

[79]     *Worthy v. Mich. Bell Tel. Co.*, No. 10-2441, 2012 WL 934029, at *5 (6th Cir. Mar. 21, 2012).

[80]     *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 549 (6th Cir. 1991));

national origin discrimination.[81]  Moreover, comments related to a plaintiff's poor command of the English language can be direct evidence of discrimination.[82]

In their Motion, Plaintiffs argue that Williams testified that Hirsch, her immediate supervisor, asked her on more than one occasion if she thought a younger person could perform her job better than she could, thereby constituting direct evidence of age discrimination.[83] Although the Order indicated that Hirsch testified at trial and denied making these comments, Hirsch did not testify at trial; rather, Defendants submitted documentary evidence indicating that Hirsch denied making these comments.[84]  Plaintiffs point to *Branson v. Harrah's*, No. 08-2804, and *Blayde v. Harrah's*, No. 08-2798, and note that Judge Donald found Hirsch not to be credible in those cases.[85]  Thus, Plaintiffs appear to argue that Judge Donald should not have engaged in the *McDonnell Douglas* analysis because Williams presented direct evidence of age discrimination.

As for Tam's Title VII national origin discrimination claim, Plaintiffs assert that they presented direct evidence of national origin discrimination.  They argue that Tam and John Barzillo testified that Alford, Tam's supervisor and one of the decisionmakers in Tam's

---

[81]     *Id.* (citing *Berke v. Ohio Dep't of Pub. Welfare*, 628 F.2d 980, 981 (6th Cir. 1980)).

[82]     *See Momah v. Dominguez*, 239 F. App'x 114, 121-22 (6th Cir. 2007) (holding that comments of this type were not direct evidence because they were made by former coworkers rather than by a decisionmaker).

[83]     (Pls.' Mot., D.E. # 150-1, at 13.)

[84]     (*Id.*)

[85]     (*Id.* at 14.)

termination, made disparaging remarks and negative comments about Tam's speech and accent.[86] Plaintiffs cite to Sixth Circuit law and argue that because accent and national origin are inextricably intertwined, comments related to an individual's accent can be direct evidence of national origin discrimination.[87] Thus, Plaintiffs argue that Judge Donald improperly relied on the *McDonnell Douglas* analysis when evaluating Tam's national origin discrimination claim.

In response, Defendants argue that both Plaintiffs' asserted direct evidence statements are actually stray remarks insufficient to qualify as direct evidence of discrimination.[88] They assert that the Order thoroughly analyzed the circumstantial evidence presented in the case and determined that Plaintiffs did not prove their respective claims.[89] In reply, Plaintiffs seize on Hirsch's alleged lack of testimony and assert that Defendants did not present any testimony to contradict Williams' statements regarding direct evidence of her age discrimination.[90]

The Court finds that Judge Donald properly applied the *McDonnell Douglas* analysis to Hirsch's comments to Williams. Hirsch stated that he "would like for a younger person to do [Williams'] job."[91] Applying the four factors listed above, the Court finds that this comment, made twice to Williams at two separate meetings, does not constitute direct evidence of age discrimination. First, Hirsch was not the individual who decided to terminate Williams; instead,

---

[86]     (*Id.*)

[87]     (*Id.*)

[88]     (Defs.' Resp., D.E. # 152, at 15.)

[89]     (*Id.* at 17.)

[90]     (Pls.' Reply, D.E. # 157, at 5.)

[91]     (Trial Tr., at 73.)

Young made the decision to fire her based on his recommendations. Thus, this factor weighs against finding direct evidence of age discrimination. Second, the remarks were isolated: they occurred only twice at meetings some time apart. The Court does not believe that two similar statements constitute a "pattern of biased comments;" accordingly, this factor weighs against finding direct evidence of age discrimination. Third, the remarks were made contemporaneously with Hirsch's offer of a different position for Williams. Thus, the third factor weights in favor of direct evidence. Fourth, the remarks are not ambiguous: stating that Hirsch would like a younger person to do Williams' job clearly relates to Williams' age.

On balance, the Court concludes that Hirsch's statements do not amount to direct evidence of discrimination. Although the statements directly comment on Williams' age, Hirsch only made them twice. Moreover, Young agreed with his recommendation to terminate Williams after independently reviewing his findings; thus, Hirsch did not make the ultimate decision to terminate Young. Therefore, because Young conducted an independent investigation of Williams' conduct and did not make the age-related statements, the Court finds that Hirsch's comments do not constitute direct evidence of age discrimination. Therefore, Judge Donald did not err in applying the *McDonnell Douglas* analysis to Williams' ADEA claim, and Plaintiffs' Motion to Alter or Amend the Judgment is **DENIED** in this regard.

However, the Court cannot apply such a straightforward analysis to Tam's asserted direct evidence of national origin discrimination. At trial, Tam testified as follows:

MR. CRAIG: Okay. And in the Technical section it says: "Improve grammar skills through classes offered or outside training." Did you go to that training?

TAM: Yes.

MR. CRAIG: What training did you attend?

TAM:  I went to -- they give me a course to go to 11K which is a grammar assistance, and I completed that.

MR. CRAIG:  Okay.  And you also have: "Make sure verbiage is correct before sending out or responding e-mails."  Did you accomplish that?

TAM:  Yes.

MR. CRAIG:  Okay.  The other, Communication: "Speak with a slower pace so that she can be more easily understood."  Did you speak slower?

TAM:  Yes.

MR. CRAIG:  Okay.  Says: "Listening completely to what others are saying and check for understanding before responding."  Did you do that?

TAM:  Yes.

. . . .

MR. CRAIG:  Okay.  And: "Josie needs to improve her decision making skills.  She must provide input and be a part of the team mentality.  Her communication capabilities, which includes verbal and written[,] need[] to improve.  This must begin immediately and [be] ongoing." And you did that, correct?

TAM:  Yes.

. . . .

MR. HANCOCK:  Did you have any trouble understanding any of the -- any of the questions that you were asked yesterday?

TAM:  Yes.

MR. HANCOCK:  You did have trouble understanding them?

TAM:  Yes.

MR. HANCOCK:  Okay.  Did you have any trouble understanding the questions you were asked during the *Branson* trial when you came to this court and testified previously?

TAM:  No.

MR. HANCOCK:  What problems did you have understanding the questions that you were asked yesterday?

TAM:  I think I was asked about why didn't -- why did -- why didn't you take the demotion.

MR. HANCOCK:  Can you say that one more time, I apologize.

TAM:  Why didn't you take the demotion --

MR. HANCOCK:  Uh-huh.

TAM:  -- that's decrease of pay and I said no, and it should be yes.

MR. HANCOCK:  Is there anything else about your testimony yesterday that you would like to discuss that you believe was incorrect?

TAM:  I was notified did somebody notify me about the card counter, the player --

MR. HANCOCK:  Uh-huh.

TAM:  -- and I say no, yesterday I say no and just think about it I think one of the pit supervisors mentioned it to me.

. . . .

MR. HANCOCK:  In your lawsuit you've alleged that your -- the manner in which you speak is a result of your national origin?

TAM:  Yes.

MR. HANCOCK:  All right.  Is this what you're being counseled for, not having an in-control demeanor, speaking at slower pace that's more easily understood and not speaking in a dictatorial fashion; do you maintain today in court that those characteristics are related to your national origin?

TAM:  Yes.

MR. HANCOCK:  You do?

TAM:  Yes.

MR. HANCOCK: And it is your testimony today that these characteristics of your dialect and -- and accent relate specifically to your national origin, your national origin speaks faster in a dictatorial fashion?

TAM: Yes.

MR. HANCOCK: Do you ever let anybody that was providing this performance review know that you had that opinion?

TAM: No.

MR. HANCOCK: Did you ever tell them I speak this way because I am from Madagascar?

TAM: No.

MR. HANCOCK: Did you ever let anybody know that you had that opinion?

TAM: Yes, I told them to slow me down if I speak too fast, I mean, you know, if they don't understand me to stop me and for me to speak slowly.[92]

Whether these statements qualify as direct evidence of national origin discrimination is a close call. Tam stated that Madagascarians speak quickly in a quick, dictatorial fashion, and she was instructed to improve those characteristics and bring them into compliance with typical American speech norms. This interpretation of Defendants' criticism of her speech could qualify as direct evidence of national origin discrimination. On the other hand, the instructions to improve her method of speed of speech and grammar could have been legitimate job-related performance requirements. Tam worked in the service industry at a casino, and she interacted with customers and other employees on a daily basis. Accordingly, Defendants could have called Tam's manner of speech to her attention to ensure that she accurately and timely

---

[92]     (Trial Tr. at 197-99, 221-22, 247-48.)

communicated with customers and her coworkers. This interpretation would not qualify as direct evidence of national origin discrimination.

But the Court need not decide whether the comments constitute direct evidence of national origin discrimination. If the comments are not direct evidence, Judge Donald properly applied the *McDonnell Douglas* analysis, and the Court would not otherwise disturb her application of the *McDonnell Douglas* framework and its conclusions. However, even if the comments were direct evidence of national origin discrimination, Defendants presented sufficient evidence to satisfy their burden of persuasion. When a plaintiff presents direct evidence of discrimination, he or she "does not bear the burden of disproving other possible nonretaliatory reasons for the adverse action."[93] Instead, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive."[94]

Here, Judge Donald's factual findings indicate that Tam received two disciplinary write-ups in 2006.[95] First, she made an inappropriate inquiry into her daughter's request for time off. Second, she failed to stop an "advantage player" after receiving notification from surveillance, resulting in a loss to the casino. Additionally, approximately five weeks prior to her termination, Tam approved a payout to a winning customer which did not reflect the proper amount of federal tax withholding, resulting in a $7,000 loss to the casino.[96] Given these three events, even if Tam

---

[93]     *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 382 (6th Cir. 2002).

[94]     *Id.*

[95]     (Order, D.E. # 143, at 6.)

[96]     (*Id.* at 7.)

presented direct evidence of national origin discrimination, the Court finds that Defendants put forth sufficient evidence to show that it would have decided to fire Tam even without their concerns over her speech mannerisms and demeanor. Accordingly, Plaintiffs' Motion to Alter and Amend the Judgment is **DENIED** in this regard.

## Application of the *McDonnell Douglas* Test at Trial

The *McDonnell Douglas* analysis applies equally at trial and at summary judgment.[97] Only upon the presentation of evidence regarding each element of a plaintiff's prima facie case does the burden of production shift to a defendant to present evidence of a legitimate, nondiscriminatory reason for the adverse employment action.[98] "The effect of failing to produce evidence to rebut the *McDonnell Douglas* . . . presumption is not felt until the prima facie case has been *established*, either as a matter of law (because the plaintiff's facts are uncontested[, such as at summary judgment]) or by the factfinder's determination that the plaintiff's facts are supported by a preponderance of the evidence."[99] However, only once a defendant comes forward with a legitimate, nondiscriminatory reason does the *McDonnell Douglas* framework drop away, thereby leaving the factfinder to decide the ultimate question: "whether plaintiff has proven 'that the defendant intentionally discriminated because of his'" or her protected status.[100]

Permitting a case to go to trial after denying summary judgment on the merits of the *McDonnell Douglas* framework *can be* "construed as a tacit acknowledgement of [the p]laintiffs'

---

[97]     *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509-10 (1993).

[98]     *Id.* at 509.

[99]     *Id.* at 510 n.3.

[100]    *Id.* at 511.

prima facie case."[101]  However, just because an employment discrimination case survives summary judgment does not mean that the court reached the question of the prima facie case at summary judgment or that the plaintiff successfully presented evidence of all four elements of the prima facie case at trial.  Although "all that is required of [a] plaintiff at the prima facie stage is to demonstrate that he has a case, that the evidence is on his side,"[102] surely courts are not required to engage in a hypothetical analysis in cases where a plaintiff has failed to demonstrate that he has a prima facie case and that he does in fact have evidence on his side.[103]

In their Motion, Plaintiffs argue that the Order inappropriately resolved their case at the prima facie case stage when the case was fully tried on the merits.[104]  Plaintiffs state that "the fact that the district court was faced with the prima facie case question at the summary judgment stage and then allowed the case to go to trial could be construed as a tacit acknowledgment of the plaintiff's prima facie case."[105]  Plaintiffs contend that both of them proved their prima facie cases; they also point to *Blayde* and *Branson* as "sharing common facts, witnesses, and events." Based on those two cases, these Plaintiffs submit that they are more credible than Defendants' witnesses due to Judge Donald's credibility determinations in *Blayde* and *Branson*.[106]  Plaintiffs argue that "the outcome of [their] case[s] should have been decided based on whether or not

---

[101]     *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997).

[102]     *Avery*, 104 F.3d at 862 (quotation omitted).

[103]     *See id.*

[104]     (Pls.' Mot., D.E. # 150-1, at 15.)

[105]     (*Id.*)

[106]     (*Id.* at 16.)

[they] proved by a preponderance of all of the evidence presented that they were or were not discriminated against based on their ages and/or national origin."[107] Thus, Plaintiffs request the Court to consider all of the evidence and alter or amend the Order to rule as to whether Plaintiffs proved discrimination by a preponderance of the evidence.[108]

The Court finds that the particular circumstances of this case merited application of the *McDonnell Douglas* test at trial. Defendants' Motions for Summary Judgment concerned whether they were Plaintiffs' employers and whether they were covered under Title VII and the ADEA.[109] Defendants' new counsel abandoned this approach one month before trial and proceeded to trial on the merits of Plaintiffs' claims. Of course, the ultimate question in a Title VII or ADEA case is whether the defendants engaged in unlawful discrimination. However, if plaintiffs have only circumstantial evidence at their disposal, courts must use the *McDonnell Douglas* framework to ensure that the plaintiffs have sufficient evidence to even arrive at this ultimate question. Here, Defendants' briefing at the summary judgment stage did not address Plaintiffs' prima facie cases; the first time the parties presented evidence regarding any alleged discrimination was at trial. Plaintiffs' satisfaction of their initial prima facie case burdens was essential to shifting the burden of production to Defendants to enable Judge Donald to arrive at the ultimate question of discrimination. As such, the Court finds that Judge Donald did not err by applying the *McDonnell Douglas* framework at trial or in her Order. Accordingly, Plaintiffs' Motion is **DENIED** in this regard.

---

[107]   (*Id.* at 17.)

[108]   (*Id.* at 18.)

[109]   (Defs.' Mots. for Summ. J., D.E. # 78-79.)

**Plaintiffs' Qualifications**

In their Motion, Plaintiffs argue that the Order did not take into account all of the testimony presented at trial because it did not thoroughly discuss whether Plaintiffs were qualified for their positions.[110]  Plaintiffs again cite to *Branson* and *Blayde* and argue that "[t]he same witnesses testified in all three trials. . . . if [Judge Donald] had considered all of the evidenced presented at trial in [this case], [her] ruling would have been more in line with the rulings in" *Blayde* and *Branson*.[111]  Additionally, Plaintiffs argue that Defendants' higher standards go more toward their legitimate nondiscriminatory reason for Plaintiffs' termination rather than Plaintiffs' qualifications; Plaintiffs aver that Defendants' legitimate expectations must be examined independently from their nondiscriminatory reasons for terminating Plaintiffs.[112]  Plaintiffs state that "once a defendant responds with a legitimate nondiscriminatory reason the prima facie case is no longer relevant" and that "the Court must weigh the credibility of this legitimate nondiscriminatory reason" to determine whether Defendants discriminated against Plaintiffs, as Judge Donald did in *Blayde* and *Branson*.[113]

In response, Defendants argue that Plaintiffs have failed to articulate arguments meriting alteration or amendment of the Order.  They argue that the Order "discusses Plaintiffs' significant performance shortcomings in an effort to show that Defendants' articulated legitimate

---

[110]     (Pls.' Mot., D.E. # 150-1, at 19.)

[111]     (*Id.*)

[112]     (*Id.* at 19-20.)

[113]     (*Id.* at 20.)

34

nondiscriminatory reason for the employment actions taken were warranted."[114]  Defendants urge

the Court not to rely on Judge Donald's decisions in *Blayde* and *Branson* and to instead engage

in an independent evaluation of the case as presented.[115]

The Court finds that Plaintiffs have failed to present sufficient reasons to disturb Judge

Donald's holdings in *Williams* and *Tam*.  That Judge Donald found for the plaintiffs in *Blayde*

and *Branson* has no bearing on her findings in the cases currently before the Court.  Unless cases

are combined for trial—as these two cases are—judges must evaluate individual bench trials on

the facts, evidence, and arguments presented in each case.  The outcome of one case does not

determine the outcome of another, particularly when witnesses' testimony differs or the parties

call different witnesses.  Plaintiffs are dissatisfied with Judge Donald's ruling in this case

because it differs from her rulings in *Blayde* and *Branson*.  However, the Court's review is

limited to the record of *Williams* and *Tam*, and Plaintiffs' dissatisfaction with Judge Donald's

ruling is an insufficient ground to alter or amend the judgment in these cases.[116]  Moreover, the

Order discussed each Plaintiff's qualifications and determined that Plaintiffs were not meeting

Defendants' legitimate expectations at the time of their termination.  Thus, they were not

qualified for their positions and failed to make out their prima facie cases.  Accordingly, this

portion of Plaintiffs' Motion is **DENIED**.

## CONCLUSION

---

[114]     (Defs.' Resp., D.E. # 152, at 17.)

[115]     (*Id.* at 18.)

[116]     Throughout their Motion, Plaintiffs rely on the rulings in *Blayde* and *Branson* in
support of their argument that Judge Donald decided *Tam* and *Williams* incorrectly.  However, as
discussed here, their reliance on those two unrelated, non-companion cases tried in a separate
bench trial is unpersuasive and without merit.

For the foregoing reasons, Plaintiffs' Motion is **DENIED**.

**IT IS SO ORDERED.**

                        **s/ S. Thomas Anderson**
                        S. THOMAS ANDERSON
                        UNITED STATES DISTRICT JUDGE

                        Date: July 6, 2012.